**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID CAUVEL,** ) | |
|         **Plaintiff** ) | |
| ) | |
| **v.** ) | **C.A. No. 08-134 Erie** |
| ) | |
| **SCHWAN HOME SERVICES, INC.,** ) | **Magistrate Judge Baxter** |
|         **Defendant.** ) | |

**OPINION AND ORDER**

Chief Magistrate Judge Susan Paradise Baxter.

## I.      INTRODUCTION

### A.      Relevant Procedural and Factual History

On or about March 28, 2008, Plaintiff David Cauvel, a resident of Erie County, Pennsylvania, commenced this wrongful discharge action by filing a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, against his former employer, Defendant Schwan Home Services, Inc. ("Schwan"), a Minnesota corporation in the business of producing, selling, and distributing frozen food products. [Document # 1, Exhibit 1]. The action was removed to this Court by Schwan on May 5, 2008, pursuant to 28 U.S.C. § 1441(a), based on diversity of citizenship under 28 U.S.C. § 1332. [Document # 1]. Both parties have consented to the jurisdiction of the Chief Magistrate Judge.

In his Complaint, Plaintiff alleges that he was employed as the Location General Manager of Schwan's Erie, Pennsylvania, operations. (Complaint at ¶¶ 3, 4). Plaintiff alleges that, at some point during his employment with Schwan, he alerted his supervisors that he discovered certain delivery truck drivers had been depositing money obtained from their delivery routes one or two days after the money was received, in violation of company policy. (Id. at ¶¶ 5-7). On October 17 and 18, 2007, after an internal investigation determined that money was missing from certain drivers' deposits, Plaintiff was instructed by Schwan

supervisors to report to the Pennsylvania State Police Barracks on October 26, 2007, to submit to a polygraph test. (Id. at ¶¶ 8-10). On October 25, 2007, Plaintiff informed one of the supervisors that he would not take a polygraph test. (Id. at ¶ 11). Plaintiff was subsequently suspended from his job on October 31, 2007, and was ultimately terminated from his position as Location General Manager on November 30, 2007. (Id. at ¶¶ 12-13). At the time of his termination, Plaintiff was informed that he could continue working for Schwan if he agreed to relocate to Westmoreland, New York, for decreased pay, or he could apply for a lower paying position as route sales person at any depot other than Erie. (Id. at ¶ 14). Plaintiff refused both of these options on December 4, 2007, and this action ensued. (Id. at ¶ 15).

Plaintiff claims that Schwan's adverse employment actions were wrongfully taken in retaliation for his refusal to submit to a polygraph test. As a result, Plaintiff seeks to recover compensatory and punitive damages.

On May 23, 2008, Schwan filed an Answer, Affirmative Defenses and Counterclaim in response to Plaintiff's Complaint. [Document # 4]. The Counterclaim contains two Counts: breach of fiduciary duty and conversion. In support of these claims, Schwan alleges that, beginning in approximately April 2007 and continuing in August 2007, its Erie location, under Plaintiff's management, began to experience recurring problems with bank deposits being made late and containing insufficient funds. (Document # 4, Counterclaim, at ¶¶ 14, 15). In addition, Schwan claims that during 2007 the Erie location was also experiencing problems with property theft. (Id. at ¶ 16). As a result, Schwan contends that it conducted an internal investigation, which discovered over $ 50,000.00 in missing deposits, plus thousands of dollars in stolen property. (Id. at ¶ 17). Schwan alleges that it reported the missing funds and property to the Pennsylvania State Police Department, which then began its own investigation. (Id. at ¶ 18). According to Schwan, it was determined that Plaintiff "was in violation of company policy regarding banking and loss prevention policies and was not properly managing his employees." (Id. at ¶ 19). Schwan alleges that at various times during 2007 route managers dropped off their bank deposit bags in Plaintiff's office and that Plaintiff had direct access to the cash contained in the deposit bags. (Id. at ¶¶ 24-25). As a result, Schwan claims that Plaintiff "either condoned

and/or participated in the violation of corporate policy, which resulted in the loss of property."

(Id. at ¶ 26).

With specific regard to its breach of fiduciary duty claim, Schwan contends that:

> 31. [Plaintiff], as a trusted employee of Schwan's, owed a fiduciary duty to Schwan's to act in the best interest of Schwan's.
>
> 32. Upon information and belief, [Plaintiff] misappropriated and used for his own purposes and/or knowing [sic] allowed third-party employees to misappropriate funds for their own use, funds which were to be used solely in connection with [Plaintiff's] work for Schwan's, thereby breaching his fiduciary duty to Schwan's.
>
> 33. As a direct and proximate result of [Plaintiff's] actions, as set forth above, Schwan's suffered damages in an amount in excess of $ 50,000.00.

(Id. at ¶¶ 31-33).

With specific regard to its conversion claim, Schwan alleges that:

> 36. The damages of Schwan's as aforesaid were directly and proximately caused by the negligent, willful and wanton actions of [Plaintiff] in the following particulars:
>
> > (a) [Plaintiff] wrongfully, willfully and unlawfully exercised dominion over the personal property belonging to Schwan's, and either converted same for his own use or knowingly allowed and permitted the conversion by another third-party(ies);
> >
> > (b) At all times material hereto, [Plaintiff] acted without Schwan's permission and consent, and without lawful justification, in exercising dominion over and converting Schwan's property for his own use or for the use of another third-party(ies);
> >
> > (c) [Plaintiff] acted in a willful and wanton manner in retaining possession of Schwan's personal property, or for that of a third-party, thus depriving Schwan's of possession of its personal property.

Plaintiff has filed a motion to dismiss Schwan's Counterclaim, arguing that it fails to state a cause of action upon which relief may be granted. [Document # 5]. In particular, Plaintiff contends that the Counterclaim "does not allege that plaintiff embezzled or stole any money from the company," but merely alleges that Plaintiff "may" have embezzled or stole money. (Document # 6, Plaintiff's Brief, at p. 2). Second, Plaintiff argues that, "assuming

3

plaintiff did violate loss prevention procedures, the punishment according to the Counterclaim is dismissal," and "[t]here is no legal basis for requiring the plaintiff to reimburse the defendant for losses caused by" any embezzlement. (Id. at p. 3). Third, Plaintiff claims that the Counterclaim alleges that Plaintiff defrauded his employer and that the alleged fraud claim has not been pleaded with particularity, as required by Federal Rule of Civil Procedure 9(b). (Id.). Schwan has filed a brief in response to Plaintiff's motion arguing that Plaintiff has misconstrued its claims and that the Counterclaim sufficiently sets forth cognizable causes of action. [Document # 9]. This matter is now ripe for consideration.


**B.      Standard of Review**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id., 127 S.Ct. at 1973 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal

conclusions set forth as factual allegations. <u>Twombly</u>, 127 S. Ct. at 1965 <u>citing</u> <u>Papasan v.</u> <u>Allain</u>, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." <u>Id</u>., 127 S.Ct. at 1974.

## II.    DISCUSSION

Plaintiff's first argument that Schwan "does not allege that he embezzled or stole any money from the company" is based solely upon a single allegation in the Counterclaim that states that Plaintiff "**may** have been involved in the loss of the money and property." (Counterclaim at ¶ 21)(emphasis added). However, Plaintiff's selective reading of Schwan's Counterclaim is misguided, as he has failed to consider the totality of the Counterclaim's allegations. In particular, Schwan specifically alleges that "[u]pon information and belief, [Plaintiff] misappropriated and used for his own purposes ... funds which were entrusted to [Plaintiff] by Schwan's," and "[Plaintiff] wrongfully, willfully, and unlawfully exercised dominion over the personal property belonging to Schwan's, and ... converted same for his own use...." (Counterclaim at ¶¶ 32, 36(a)). These allegations clearly and unambiguously claim that Plaintiff took money and property from the company. Thus, Plaintiff's first argument is without merit.

Second, Plaintiff argues that "[t]here is no legal basis to require the plaintiff to reimburse [Schwan] when an employee under plaintiff's supervision embezzles money." (Document # 6 at p. 3). In making this argument, Plaintiff is apparently under the mistaken belief that Schwan seeks reimbursement from him for money or property allegedly taken by third-party employees solely because such employees were under his supervision. However, the allegations of the Counterclaim do not allege mere improper or negligent supervision on the part of Plaintiff; rather, both counts of the Counterclaim assert that Plaintiff knowingly permitted and/or participated in the unlawful conduct of the alleged third-party employees. (See Counterclaim at ¶¶ 32, 36). If Schwan is successful in proving that Plaintiff knowingly permitted and/or

participated in the unlawful misappropriation of Schwan's money or property by third-party employees, there would certainly be a legal basis to seek restitution from Plaintiff for any such missing funds and/or property. Accordingly, Plaintiff's second argument also lacks merit.

Third, Plaintiff argues that the Counterclaim "alleges that the plaintiff defrauded his employer," but fails to state the allegedly fraudulent conduct with particularity in accordance with Fed.R.Civ.P. Rule 9(b). (Document # 6 at p. 3). Once again, this argument completely misconstrues the Counterclaim's allegations. In fact, the word "fraud" does not even appear anywhere in the Counterclaim, nor do the counts of breach of fiduciary duty and conversion implicate fraudulent conduct, in any way. This argument must also fail.

Finally, although not argued with particularity, Plaintiff makes the generalized assertion that the Counterclaim "fails to state a cause of action against the plaintiff and should be dismissed." (Document # 6 at p. 2). To address this assertion, the Court will review the Counterclaim's two counts to determine whether they sufficiently set forth the elements necessary to state claims of breach of fiduciary duty and conversion.

### A. Breach of Fiduciary Duty

In the context of an employee/employer relationship, the elements a plaintiff must plead and prove to establish a claim of breach of fiduciary duty are: "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit ... was a real factor in bringing about plaintiff's injuries." McDermott v. Party City Corp., 11 F.Supp.2d 612, 626 n. 18 (E.D.Pa.1998)(citation omitted). These elements are plainly set forth in Schwan's Counterclaim. Specifically, Schwan alleges that Plaintiff misappropriated and used for his own purposes, or knowingly permitted thirty-party employees to misappropriate and use for their own use, funds that were entrusted to Plaintiff by Schwan to be used solely in connection with his employment with Schwan, and that as a direct consequence of Plaintiff's actions, Schwan suffered damages in an amount in excess of $ 50,000.00. (Counterclaim at ¶¶ 32-33). As a result, Plaintiff's claim that Schwan has failed

to state a claim of breach of fiduciary duty upon which relief may be granted is without merit.

### B.     Conversion

The elements of conversion are:  (1) the deprivation of another's right of property in, or use or possession of, a chattel; (2) without the owner's consent; and (3) without lawful justification.  McDermitt, 11 F.Supp.2d. At 626 n.18 (citations omitted).  Here, Schwan has alleged that Plaintiff "wrongfully, willfully and unlawfully exercised dominion" over Schwan's personal property, without Schwan's consent, and converted the same for his own use. (Counterclaim at ¶¶ 36).  Thus, Schwan has sufficiently set forth all of the elements necessary to state a cause of action for conversion, and Plaintiff's motion to dismiss the same for failure to state a claim must fail.

## III.     CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Dismiss Counterclaim [Document # 5] is DENIED.


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated:  January 9, 2009